**E-FILED**
Monday, 09 November, 2009  02:31:20 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| TRUSTEES OF SHEET METAL WORKERS LOCAL NO. 1 WELFARE TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08-cv-1023 |
| PEKIN CLIMATE CONTROL, LTD., *an Illinois corporation*, KEVIN S. BROWN, and JAMES E. BROWN, | ) ) ) ) | |
| Defendants. | ) ) | |

## O R D E R  &  O P I N I O N

In a combined motion, Plaintiff, Trustees of Sheet Metal Workers Local No. 1 Welfare Trust, has asked the Court to take the following actions: reconsider the Court's Order of January 16, 2009, which granted Defendants' motion to dismiss; vacate the corresponding Judgment entered on January 21, 2009 pursuant to Rule 59(e) of the Federal Rules of Civil Procedure; and grant leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a).  (Docs. 16-17).  For the reasons that follow, the motion is GRANTED.

### BACKGROUND

In 2005, Plaintiff, as trustee of an employee welfare benefit trust fund ("Fund"), filed a complaint in federal court against Meyer Climate Control, Inc., an Illinois corporation ("Meyer"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C § 1001 et seq.  (Doc. 1 in Case No. 05-cv-1216 in the

United States District Court for the Central District of Illinois).[1]  In that complaint,
Plaintiff alleged that Meyer had failed to make contributions to the Fund as
required under provisions of a collective bargaining agreement to which Meyer had
agreed.  Plaintiff sought to recover the delinquent contributions.  The parties to the
2005 suit subsequently consented to have the case heard to judgment by United
States Magistrate Judge John A. Gorman pursuant to 28 U.S.C. § 636(c).  In an
Order dated December 8, 2006, Judge Gorman granted Plaintiff's motion for
summary judgment and awarded Plaintiff $18,322.29 in owed contributions plus
$5,947.50 in fees and costs (for a total of $24,269.79).  (Doc. 18 in Case No. 05-cv-
1216).  On the same day, the Clerk entered judgment in favor of Plaintiff Trustees
and against Meyer in the amount of $24,269.79.  (Doc. 19 in Case No. 05-cv-1216).

Unable to collect the judgment from Meyer, Plaintiff Trustees initiated the
present action on January 22, 2008 pursuant to ERISA and Section 301(a) of the
Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185(a).  (Doc. 1 in
Case No. 08-cv-1023).[2]  This time around, Plaintiff did not sue Meyer -- according to
the 1/22/2008 Complaint, Meyer was administratively dissolved in February 2007.
(Doc. 1 at p. 2).  Instead, Plaintiff named as defendants Pekin Climate Control, Ltd.
(an Illinois corporation, referred to herein as "PCC"), Kevin S. Brown (an

[1] Case No. 05-cv-1216 will be referred to, interchangeably, as "the 2005 suit," "the
prior suit," or "the previous suit."

[2] Although the 1/22/2008 Complaint states that subject-matter jurisdiction as to the
ERISA claim is proper pursuant to 29 U.S.C. § 1132(e) (which is the provision
giving exclusive jurisdiction to federal district courts as to certain ERISA claims),
the Complaint does not specify the ERISA provision under which Plaintiff is suing.
From the context of the Complaint and other filings, it appears that Plaintiff is
suing to enforce Defendants' alleged obligations under 29 U.S.C. § 1145 pursuant to
the enforcement provisions of 29 U.S.C. § 1132(g)(2).

individual), and James E. Brown (an individual).  According to the 1/22/2008 Complaint, Kevin and James Brown were each 50 percent shareholders of Meyer with complete control over Meyer's operations.  (Doc. 1 at pp. 2-3).  The 1/22/2008 Complaint alleged that at some point close in time to the entry of judgment in the 2005 suit, Kevin and James Brown transferred Meyer's assets to PCC for inadequate consideration.  (Doc. 1 at p. 3).  The Complaint described PCC as a corporation owned and controlled by James and Kevin Brown, and it alleged that PCC "conducts substantially the same business, using substantially the same assets, at the same physical facility, with the same management, and same employees as those of Meyer Climate Control, Inc."  (Doc. 1 at p. 3).  Moreover, according to the 1/22/2008 Complaint, after Meyer was administratively dissolved in early 2007, the Browns failed to properly wind up Meyer's business affairs and failed to pay Plaintiff the amount owed pursuant to the December 8, 2006 ERISA judgment in the previous suit against Meyer.  (Doc. 1 at pp. 2-3).

The 1/22/2008 Complaint alleged that the Browns' transfer of assets from Meyer to PCC, alongside the subsequent dissolution of Meyer without proper winding-up of the corporation's business, was designed to hinder Plaintiff's ability to collect the $24,269.79 ERISA judgment against Meyer.  (Doc. 1 at p. 3).  Plaintiff asked this Court to "determine that Pekin Climate Control, Ltd. is the alter ego, or improper successor in interest to the assets of Meyer Climate Control, Inc."  (Doc. 1 at p. 6).  Each of the three Counts in the 1/22/2008 Complaint requested judgment against Kevin and James Brown, jointly and severally, in the same amount owed by Meyer pursuant to the judgment in the previous suit.  The 1/22/2008 Complaint

3

omitted any specific request for judgment against PCC (although Count III does request judgment against Meyer -- a possible typo).

On March 13, 2008, Defendants filed a motion to dismiss the 1/22/2008 Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  The Court granted the motion to dismiss in an Order dated January 16, 2009, finding a lack of subject-matter jurisdiction.  (Doc. 14).  The Court based its ruling on Peacock v. Thomas, 516 U.S. 349 (1996), a United States Supreme Court decision that essentially precludes a district court from exercising ERISA jurisdiction or federal ancillary jurisdiction over a suit to enforce a previously-obtained ERISA judgment, for which a corporation is liable, by "piercing the corporate veil" to reach a corporate officer or shareholder.  Because this Court viewed the present action as an attempt by Plaintiff to enforce a previously-obtained ERISA judgment against third parties who were not involved in the initial suit, the Court dismissed the suit pursuant to Peacock.  The Clerk entered judgment in this action on January 21, 2009.  (Doc. 15).

On January 26, 2009, Plaintiff requested reconsideration of the Court's ruling on Defendants' motion to dismiss.  On February 12, 2009, Defendants responded in opposition.  Plaintiff's motion to reconsider and vacate judgment is now before the Court for disposition.

4

**DISCUSSION**

Upon reconsideration of its January 16, 2009 decision to dismiss the 1/22/2008 Complaint and enter judgment, the Court is persuaded that Seventh Circuit precedent requires a different result.[3]

**Subject-Matter Jurisdiction**

In two post-Peacock decisions, Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 85 F.3d 1282 (7th Cir. 1996) and Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031 (7th Cir. 2000), the United States Court of Appeals for the Seventh Circuit limited Peacock's reach, applying reasoning that is applicable under the facts alleged in the present action.

Peacock is the starting point of the analysis.  Peacock involved a scenario in which an employee, who had previously obtained an ERISA judgment against his former employer, sought to enforce the judgment against the employer's officer/shareholder by bringing a successive "corporate-veil-piercing" action in federal court.  516 U.S. at 351-52.  The district court determined that the employee stated a claim under federal law; the court exercised subject-matter jurisdiction over the successive suit, pierced the veil, and entered judgment in favor of the employee.  Id. at 352-53.  The Court of Appeals for the Fourth Circuit affirmed the judgment, holding that the district court properly executed ancillary jurisdiction over the successive suit.  Id. at 352.  The Supreme Court reversed, holding that the

---

[3] Even if the January 16, 2009 Rule 12(b) dismissal had been proper, the Court should have given Plaintiff an opportunity to amend its 1/22/2008 Complaint once as a matter of course before entering judgment.  Fed. R. Civ. P. 15(a)(1); Foster v. DeLuca, 545 F.3d 582, 583-84 (7th Cir. 2008).

employee's veil-piercing claim was not cognizable under ERISA and that ancillary jurisdiction did not support the employee's attempt to enforce the previously-obtained ERISA judgment by suing a new defendant.  Id. at 353-59.  Accordingly, the Supreme Court concluded that the district court lacked subject-matter jurisdiction over the successive suit.  Id. at 360.

Several months after Peacock, the Court of Appeals for the Seventh Circuit decided Central States.  In Central States, a plaintiff pension fund that was unable to collect on an ERISA judgment against a group of corporate defendants brought a successive suit to impose the underlying ERISA liability on two different companies under an "alter ego" theory.  85 F.3d at 1284.  Affirming the district court's exercise of subject-matter jurisdiction, the Court of Appeals distinguished Peacock.  In Peacock, the Court of Appeals reasoned, the plaintiff employee sued generically to enforce a judgment under a "piercing-the-corporate-veil" theory -- there was no allegation that the defendant officer/shareholder was responsible for the underlying ERISA violation.  Conversely, stated the Court of Appeals, in Central States, the plaintiff fund alleged that the new corporate defendants so dominated and controlled the previous "judgment defendants" that these new defendants played a role in the initial ERISA violation.  Id. at 1285-86.  According to the Court of Appeals, the plaintiff in Central States was not suing new defendants merely to enforce a judgment; rather the plaintiff was alleging "a specific claim for relief under ERISA."  Id. at 1286.

Subsequently, in May 2000, the Seventh Circuit Court of Appeals again addressed the distinction between veil-piercing liability and alter-ego liability in

Elite Erectors.  The plaintiff fund in Elite Erectors obtained a default judgment under ERISA against a "primary" corporate defendant and against a separate corporation and an individual alleged to be alter egos of the primary defendant.  212 F.3d at 1033.  The Court of Appeals held that the alter-ego claims against the two "secondary" defendants arose independently under ERISA, rejecting the defendants' argument that the alter-ego claims were based on a theory of vicarious liability governed exclusively by state law.  Id. at 1037.  In directly addressing the difference between vicarious liability and direct liability in the ERISA context, the Court of Appeals stated,

> Efforts to pierce the corporate veil ask a court to hold A vicariously liable for B's debt. . . . But a contention that A is B's "alter ego" asserts that A and B are the same entity; liability then is not vicarious but direct.

Id. at 1038 (citing Central States, 85 F.3d at 1286-87) (emphasis in original).[4]  The Court of Appeals went on to hold that the plaintiff fund's complaint, which alleged alter-ego claims, invoked subject-matter jurisdiction under ERISA regardless of whether the complaint properly pleaded all components of alter-ego status.  Id. at 1038-39.

With the relevant legal landscape set out above as a backdrop, the core question on reconsideration in the present case is whether Plaintiff's 1/22/2008 Complaint sufficiently pleads (for purposes of subject-matter jurisdiction) an action under ERISA against PCC, Kevin Brown, and James Brown pursuant to a direct,

---

[4] The United States Court of Appeals for the Tenth Circuit has criticized Elite Erectors for its categorical presumption that all alter-ego claims involve direct liability.  See Ellis v. All Steel Construction Inc., 389 F.3d 1031, 1034-1035 (10th Cir. 2004).

alter-ego theory of liability.  According to the Seventh Circuit Court of Appeals, an alter-ego determination in the present context would involve consideration of the following factors: "1) the amount of respect given to the separate identity of the corporation by its shareholders; 2) the fraudulent intent of the incorporators; 3) the degree of injustice visited on the litigants by respecting the corporate entity."

Central States, 85 F.3d at 1287; see also Trs. of the Cement Masons Pension Fund, Local 502 v. Evans Constr./Consulting LLC, 2009 WL 2496536, at *2 (N.D. Ill. Aug. 12, 2009) (applying Central States).  In particular,

> [T]he alter ego doctrine focuses on "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets."  In sum, "unlawful motive or intent are critical inquiries in an alter ego analysis."

Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc., 831 F.2d 1309, 1312 (7th Cir. 1987) (internal citation omitted).  Allegations suggesting the purported alter ego's "common control" or domination of the original entity are also important in establishing direct liability.  Central States, 85 F.3d at 1286.  The Court, having reconsidered the matter, is of the opinion that the allegations in Plaintiff's 1/22/2008 Complaint are sufficient to establish subject-matter jurisdiction under ERISA pursuant to an alter-ego theory of direct liability.  Plaintiff's 1/22/2008 Complaint, in sum, sufficiently suggests that PCC is a disguised continuance of Meyer.  The Complaint avers the Browns' ownership of and control over both corporations, and it alleges that the Browns transferred Meyer's assets to PCC in a sham transaction designed to frustrate the collection of the ERISA judgment against Meyer in the prior suit.  The Complaint further

suggests that the Browns failed to respect Meyer's existence as a corporate entity by not properly winding-up the corporation's business affairs as part of its dissolution. Moreover, the 1/22/2008 Complaint specifically requests a finding that PCC is Meyer's alter-ego successor.  The 1/22/2008 Complaint, read as a whole, is sufficient to provide a basis for the assumption of federal-question jurisdiction under ERISA. Fed. R. Civ. P. 8(a)(1); see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"); see also Elite Erectors, 212 F.3d at 1038 (noting that the pleading standard for invoking subject-matter jurisdiction is less demanding than the Fed. R. Civ. P. 12(b)(6) standard); Jensen v. State Bd. of Tax Comm'rs of State of Ind., 763 F.2d 272, 278 (7th Cir. 1985) (recognizing that the existence of jurisdiction is determined by reading the complaint as a whole without regard for imperfections in pleading style).  Accordingly, the Court's dismissal of the 1/22/2008 Complaint based on lack of subject-matter jurisdiction was in error. Reconsideration of the issue is granted, and the Court's January 16, 2009 decision is reversed.

### Remainder of Defendants' March 13, 2008 Rule 12(b) Motion

The Court, having reversed its decision to grant Defendants' motion to dismiss for lack of subject-matter jurisdiction (which was Defendants' leading argument in the motion), will now proceed to address Defendants' remaining arguments for dismissal.

Defendants argue that Plaintiff's 1/22/2008 Complaint fails to state a claim upon which relief can be granted.  Defendants argue that "no facts are cited that would suggest ERISA has been violated."  (Doc. 8, p. 3).  The Court disagrees.  It is true that Plaintiff could have done a better job pleading its cause of action by expressly alleging that Defendants are directly liable (as alter egos of Meyer) for the conduct of Meyer that constituted the ERISA violation.  Nonetheless, that claim can be inferred from other allegations in the 1/22/2008 Complaint.  The Complaint references Meyer's ERISA violation, which was established in the previous suit, and ties the violation to the currently-named Defendants through allegations supporting alter-ego liability.  The core allegations have already been identified in the section of this Opinion regarding subject-matter jurisdiction.  Central States and Elite Erectors indicate that, as a matter of law, the type of theory Plaintiff is pursing here is viable in federal court.  See also Hudson County Carpenters Local Union No. 6 v. V.S.R. Constr. Corp., 127 F. Supp.2d 565, 570 (D.N.J. 2000).  Although the 1/22/2008 Complaint is not optimally structured, Plaintiff has nonetheless met the minimum Rule 12(b)(6) threshold of pleading facts that state a claim for relief that is plausible on its face.  See EEOC v. Lee's Log Cabin, Inc., 554 F.3d 1102, 1105 (7th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

Defendants' next argument is that the doctrine of res judicata bars this successive action.  The Court finds Defendants' attempt at a res judicata defense to be perfunctory and inadequate.  As a result, the argument is worth addressing only briefly.  Federal common law of res judicata governs the analysis because the prior suit was brought in federal court on a federal claim.  Central States, Southeast &

Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 296 F.3d 624, 628 (7th

Cir. 2002).  Under federal law of res judicata, three requirements exist: (1) an

identity of the parties or their privies; (2) an identity of the causes of action; and (3)

a final judgment on the merits.  Id.  An identity of cause of action essentially means

that the earlier action and the present action derive from a common nucleus of

operative facts.  Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755-56 (1st Cir. 1994).

Here, Defendants fail to persuade the Court that an identity of causes of action

exists.  Although this action and the previous suit have both involved Meyer's

ERISA violation, the present action is focused on facts that could potentially

establish that PCC and the Browns are Meyer's alter egos (i.e. that Defendants are,

and should be treated as, Meyer vis-à-vis the underlying ERISA violation) whereas

the prior action focused on facts surrounding the ERISA violation itself.

Defendants -- who bear the burden of establishing res judicata as an affirmative

defense (see Allahar v. Zahora, 59 F.3d 693, 696 (7th Cir. 1995)) -- have not

presented any coherent or developed argument to show why facts relating to their

alleged alter-ego relationship with Meyer should have been raised and litigated in

the prior action.  Therefore, Defendants' attempt at a res judicata defense is

rejected.

　　　　Lastly, Defendants argue that neither Kevin nor James Brown is an

"employer" for purposes of ERISA's delinquent contributions provision, which

provides:

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms of a
> collectively bargained agreement shall, to the extent not inconsistent

with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  The term "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . includ[ing] a group or association of employers acting for an employer in such capacity."  29 U.S.C. § 1002(5).  Further, the term "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).  Plaintiff concedes that "the normal rule is that only the corporate entity is 'the employer' that may be exposed to liability under the terms of a collective bargaining agreement and § 1145."  (Doc. 11 at p. 6).  Indeed, the general rule is that ERISA does not impose personal liability on a corporation's dominant shareholder or high-ranking officer for contributions owed by the corporation under § 1145.  See Sullivan v. Cox, 78 F.3d 322, 325 (7th Cir. 1996); see also Scarbrough v. Perez, 870 F.2d 1079, 1080 (6th Cir. 1989); Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp., 845 F.2d 23 (1st Cir. 1988); Solomon v. Klein, 770 F.2d 352, 354 (3d Cir. 1985).  However, as these cited cases indicate, there are instances in which an individual officer or dominant shareholder of a corporation may be held liable for corporate responsibilities under § 1145 pursuant to veil-piercing or alter-ego theories of liability.[5]  See Sullivan, 78 F.3d at 325.  More specifically, it appears that there is

---

[5] In analyzing the prospect of officer/shareholder liability under § 1145, courts have seemingly treated the concepts of "alter ego" and "veil piercing" interchangeably.  See, e.g., Sullivan, 78 F.3d at 325; Starrett Paving, 845 F.2d at 26.  Such treatment

an exception to the bar on shareholder liability under § 1145 when there is a basis, under relevant state or federal law, for treating the corporation and the dominant shareholder as identical (or, as the Court of Appeals for the First Circuit has put it, when "the owner <u>is</u> the corporation").  <u>Starrett Paving</u>, 845 F.2d at 26.

In the present action, Plaintiff has made allegations that, if proven, could invoke the exception to the bar on shareholder liability under § 1145.  As has already been covered, the 1/22/2008 Complaint paints a picture whereby the Browns stripped Meyer of its assets and transferred them to PCC in an illegitimate attempt to avoid an ERISA judgment.  At this stage, the Court cannot find as a matter of law that the Browns are not subject to personal liability for Meyer's ERISA violation.

In sum, Plaintiff has sufficiently stated a claim of alter-ego liability, under ERISA, against Defendants.  If the facts show that Defendants are Meyer's alter egos, Meyer's ERISA liability could be imputed to Defendants.  Defendants have failed to carry their burden of persuading the Court that res judicata bars the present lawsuit.  For these reasons, Defendants' Rule 12(b) motion is denied. Because the 1/22/2008 Complaint stands, Plaintiff's motion for leave to file the amended complaint that is attached to its motion for reconsideration is moot.  The proposed amended complaint appears to be tailored specifically in response to the Court's January 16, 2009 Order, which has now been reversed.

---

is not easy to reconcile with the distinction between the two concepts that was drawn in <u>Central States</u> and <u>Elite Erectors</u>.

13

**Discussion of the Case, Going Forward**

The core question that remains as to Plaintiff's ERISA claim in this suit is whether PCC and the Browns are alter egos of Meyer such that Meyer's underlying ERISA liability should be imputed to them.  A finding that Defendants are alter egos of Meyer could establish Defendants' liability under 29 U.S.C. § 1145 as well as 29 U.S.C. § 185(a).  See Hudson County Carpenters, 127 F. Supp.2d at 568-71; see also R.R. Maint. Laborers' Local 1274 Pension, Welfare, and Educ. Funds v. Kelly R.R. Contractors, Inc., 591 F. Supp. 889, 892-93, 896 (N.D. Ill. 1984).[6]

While Plaintiff's 1/22/2008 Complaint is minimally sufficient to allow this action to proceed, there are shortcomings in the Complaint that could cause confusion down the line.  For example, Plaintiff could do a better job at clearly identifying the ERISA provisions upon which its suit is based.  Also, the Complaint seeks an alter-ego finding as to the corporate Defendant but not as to the individual Defendants.  Further, judgment is requested against the individual Defendants but not against the named corporate Defendant.  It is also worth noting that the Complaint is generally not well-organized (just one example is that it includes not one, but three, Paragraph 20s) or well-structured (the substantive difference

---

[6] If Defendants are found to be Meyer's alter egos, the doctrine of issue preclusion may bar Defendants from relitigating the issue of Meyer's ERISA violation which was established in the 2005 suit.  See Washington Group Int'l, Inc. v. Bell, Boyd & Lloyd LLC, 383 F.3d 633, 636 (7th Cir. 2004).  Under the federal common law of issue preclusion, four requirements must be met: "1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must [have been] fully represented in the prior action."  Id.  Presumably, the first three prongs could be satisfied under the present circumstances.  If the facts ultimately support an alter-ego finding as between Meyer and Defendants, the same facts would also tend to support satisfaction of the fourth prong of issue preclusion.

between the listed counts is not completely clear, muddying the water as to which allegations properly support which counts).  In its proposed amended complaint (which is merely an attachment to a motion at this point), Plaintiff has corrected some, but not all, of these potential problems.  The Court strongly recommends that Plaintiff submit an amended complaint that is better organized and more precise.  Any amended complaint must be consistent with this Opinion.[7]  Plaintiff is invited to file such an amended complaint within thirty (30) days.

## CONCLUSION

Plaintiff's motion to reconsider and vacate judgment (Doc. 16) is GRANTED.  The Court's Order of January 16, 2009 is VACATED and REVERSED as stated herein.  The Judgment entered on January 21, 2009 is VACATED pursuant to Fed. R. Civ. P. 59(e).  Defendants' motion to dismiss (Doc. 7) is DENIED.  Plaintiff is invited to file a better-organized and more-precise amended complaint within thirty (30) days.  Any amended complaint must be consistent with this Opinion.


ENTERED this <u>9th</u> day of November, 2009.


                              s/ Joe B. McDade
                              JOE BILLY McDADE
                              United States District Judge


---

[7] Plaintiff may choose to tack on any supplemental claims over which this Court could appropriately assume jurisdiction pursuant to 28 U.S.C. § 1367.